## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW
## YORK

| | | |
|---|---|---|
| JAWID NAJAFI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| INTERMOLECULAR, INC., KENNETH H. | ) | |
| TRAUB, CHRISTIAN F. KRAMER, IRWIN B. | ) | |
| FEDERMAN, MARVIN D. BURKETT, | ) | |
| GEORGE M. SCALISE, MATTHEW S. | ) | |
| FURNAS, ADAM SCHEER, and JONATHAN | ) | |
| B. SCHULTZ, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Jawid Najafi by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Intermolecular, Inc. ("Intermolecular" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Intermolecular, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in

1

connection with the proposed acquisition of Intermolecular by EMD Group Holding II, Inc. ("Parent"), an indirect wholly-owned subsidiary of Merck KGaA, , Darmstadt, Germany ("Merck") and EMD Performance Materials Semiconductor Services Corp. ("Merger Sub"), a wholly-owned subsidiary of Parent (the "Proposed Transaction").

2.      On May 6, 2019, Intermolecular entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into the Company, with the Company becoming the wholly-owned subsidiary of Parent.

3.      Under the terms of the proposed agreement, Intermolecular shareholders will receive $1.20 in cash for each share of Intermolecular common stock they own (the "Merger Consideration").

4.      On May 28, 2019, in order to convince Intermolecular public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Intermolecular; and (ii) the valuation analyses performed by Intermolecular's financial advisor, Cowen and Company, LLC ("Cowen").

6.      The Proposed Transaction is expected to close in the second half of 2019 and the special meeting of the Company's shareholders to vote on the Proposed Transaction can be scheduled at any time.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of Intermolecular shareholders so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Intermolecular's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78a, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Intermolecular's common stock trades on the Nasdaq Global

Select Market, which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, Intermolecular has retained MacKenzie Partners, Inc. as its Proxy Solicitor, which is located in this District at 1407 Broadway, 27th Floor, New York, NY 10018.  Moreover, Cowen, Intermolecular's financial advisor regarding the Proposed Transaction, is also located in this District at 599 Lexington Avenue, 20th Floor, New York, NY 10022.

### PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Intermolecular common stock.

12.     Defendant Intermolecular is a public company incorporated under the laws of Delaware with principal executive offices located at 3011 N. First Street, San Jose, California 95134. Intermolecular's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "IMI."

13.     Defendant Kenneth H. Traub is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14.     Defendant Christian F. Kramer is, and has been at all relevant times, a director of the Company.

15.     Defendant Irwin B. Federman is, and has been at all relevant times, a director of the Company.

16.     Defendant Marvin D. Burkett is, and has been at all relevant times, a director of the Company.

17.     Defendant George M. Scalise is, and has been at all relevant times, a director of the Company.

18.     Defendant Matthew S. Furnas is, and has been at all relevant times, a director of the Company.

19.     Defendant Adam Scheer is, and has been at all relevant times, a director of the Company.

20.     Defendant Jonathan B. Schultz is, and has been at all relevant times, a director of the Company.

21.     The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Intermolecular, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     Intermolecular provides solutions for the evaluation and development of engineered thin-film materials for next generation technology products. The Company is a partner for the innovation of advanced materials using high throughput experimentation. The Company's high productivity combinatorial (HPC) platform consists of tempus processing tools, automated characterization methods, and Informatics analysis software, which is purpose-built for research and development using combinatorial process systems in concert with established chemical vapor deposition (CVD), physical vapor deposition (PVD) and atomic layer deposition (ALD) deposition methods.

23.     On May 6, 2019, the Board caused the Company to enter into the Merger Agreement with Merck.

24.     Pursuant to the terms of the Merger Agreement, Intermolecular shareholders will receive $1.20 in cash for each share of Intermolecular common stock they own.

25.    According to the May 6, 2019, press release announcing the Proposed

Transaction:

> **Intermolecular to be acquired by Merck KGaA, Darmstadt, Germany for $1.20 per share in an all cash transaction**
> -   *Acquisition to strengthen technology offering and diversify performance materials portfolio of Merck KGaA, Darmstadt, Germany*
> -   *Transaction expected to close in the second half of 2019*
>
> ***SAN JOSE, Calif., May 6, 2019 /PRNewswire/* --** Intermolecular, Inc. (NASDAQ: IMI) has signed a definitive agreement pursuant to which a wholly owned subsidiary of Merck KGaA, Darmstadt, Germany, a leading science and technology company, will acquire Intermolecular for $1.20 per share in an all cash transaction, representing an equity value of Intermolecular of approximately $62 million. The acquisition has been unanimously approved by Intermolecular's Board of Directors and the Executive Board of Merck KGaA, Darmstadt, Germany.
>
> "We are pleased to become an integral part of Merck KGaA, Darmstadt, Germany's leading electronic materials business and look forward to all of the new and exciting opportunities we see for our customers and employees. We believe our technology expertise is very complementary and creates a unique offering that will continue to shape the innovations of tomorrow," said Chris Kramer, President and Chief Executive Officer of Intermolecular.
>
> "Intermolecular's unique capabilities in rapid material screening, in combination with the R&D pipeline of Merck KGaA, Darmstadt, Germany, will allow us to offer our customers faster materials innovation, through parallel composition experiment and full performance testing and characterization," said Kai Beckmann, member of the Merck KGaA, Darmstadt, Germany, Executive Board and CEO of Performance Materials. "We are excited to join forces with Intermolecular and bring significant advantages to our customers compared to conventional materials R&D."
>
> The transaction is expected to close in the second half of 2019, subject to the approval of Intermolecular's stockholders, clearance by the Committee on Foreign Investment in the United States (CFIUS) and the satisfaction of other customary closing conditions.
>
> Merck KGaA, Darmstadt, Germany, will acquire Intermolecular through its wholly owned subsidiary EMD Group Holding II, Inc.
> As a result of this transaction, Intermolecular will not be holding its

previously scheduled conference call on May 14, 2019.

(Emphasis in original).

**The Proxy Omits Material Information**

26.     On May 28, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The special meeting of Intermolecular stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

27.     First, the Proxy fails to provide enough information regarding financial projections for the Company.  In particular, the Proxy fails to disclose the Company's unlevered free cash flows for 2019 through 2023 ("Cash Flow Projections"). Proxy at 58.  It is indisputable that the Cash Flow Projections were the most important input in Cowen's *Discounted Cash Flow Analysis* because the analysis is based upon discounting the Cash Flow Projections to present value.  However, Defendants elected to exclude the Cash Flow Projections from the Proxy, despite the fact that they simultaneously elected to include a purported "summary" of Cowen's *Discounted Cash Flow Analysis*.

28.     Defendants elected to summarize the projections for Intermolecular, but they excised and failed to disclose the most important projections—the Cash Flow Projections.  *Id.* at 50-51.  The omission of the Cash Flow Projections renders the projection tables on pages 47 to 50 of the Proxy incomplete and misleading because, without the Cash Flow Projections, the projection summaries provide a misleading overall valuation picture of Intermolecular.  This is

7

caused by significant differences between unlevered free cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company and its stock—and the EBITDA projections that were included in the Proxy.

29.     EBITDA projection metrics *are not sufficient analogs for cash flow projections*. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1]

30.     There are fundamental differences between unlevered free cash flow and EBITDA.  EBITDA is not a sufficient alternative to unlevered free cash flows—as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you think capital expenditures are funded by the tooth fairy." [2]  Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[3]  As a result of these material differences between EBITDA and unlevered free cash flows, experts recognize unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

31.     In light of these significant differences between the Cash Flow Projections on the

---

[1]     Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").
[2]     Elizabeth MacDonald, *the Ebitda folly*, Forbes (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.
[3]     Cody Boyte, *Why EBITDA is Not Cash Flow*, Axial Forum (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/

one hand, and the EBITDA figures disclosed in the Proxy, the tables of projections on pages 47 to 50 of the Proxy were materially incomplete and misleading because, by failing to include the Cash Flow Projections, the tables provide a materially incomplete and misleading overall valuation picture of both companies. Simply put, unlevered free cash flow projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

32.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Cowen, but have omitted the crucial Cash Flow Projections. Thus, Defendants' omission renders the disclosed projections misleading.

33.     Second, the Proxy omits material information regarding the financial analyses conducted by Cowen in rendering its financial opinion for the Proposed Transaction.

34.     With respect to Cowen's *Analysis of Selected Publicly Traded Companies*, the Proxy does not disclose the individual multiples observed for CY2018A and CY2019E revenue and Adjusted EBITDA for the corresponding companies Cowen selected. *Id.* at 54-56.

35.     With respect to Cowen's *Analysis of Selected Transactions*, the Proxy fails to disclose the individual multiples Cowen observed for each of the ten selected transactions. *Id.* at 57.

9

36.     With respect to Cowen's *Discounted Cash Flow Analysis*, the Proxy is also
materially misleading and incomplete because it fails to disclose: (i) how the discount rates of
16.5% to 18.5% were selected; and (ii) how the terminal multiples of Adjusted EBITDA (4.0x to
6.0x) were selected. *Id.* at 58.  Similarly, the Proxy fails to disclose the actual cost of capital for
the Company, which forms the basis to discount net operating losses. *Id.*

37.     These key inputs are material to Intermolecular shareholders, and their omission
renders the summary of Cowen's *Discounted Cash Flow Analysis* incomplete and misleading.
As one highly-respected law professor explained regarding these crucial inputs, in a discounted
cash flow analysis a banker takes management's forecasts, and then makes several key choices
"each of which can significantly affect the final valuation."   Steven M. Davidoff, Fairness
Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount
rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change
> can markedly affect the discounted cash flow value.  For example, a
> change in the discount rate by one percent on a stream of cash flows in
> the billions of dollars can change the discounted cash flow value by tens
> if not hundreds of millions of dollars….This issue arises not only with a
> discounted cash flow analysis, but with each of the other valuation
> techniques. *This dazzling variability makes it difficult to rely, compare,
> or analyze the valuations underlying a fairness opinion **unless full
> disclosure is made of the various inputs in the valuation process, the
> weight assigned for each, and the rationale underlying these choices**.*
> The substantial discretion and lack of guidelines and standards also
> makes the process vulnerable to manipulation to arrive at the "right"
> answer for fairness.  This raises a further dilemma in light of the
> conflicted nature of the investment banks who often provide these
> opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information,
Intermolecular's shareholders cannot evaluate for themselves the reliability of Cowen's
*Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity

value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Cowen, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

38.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

39.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

43.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

44.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Intermolecular; and (ii) valuation analyses performed by Intermolecular's financial advisor, Cowen.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

46.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of

the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Cowen reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Cowen, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Cowen's analyses in connection with their receipt of the fairness opinions, question Cowen as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

48.     Intermolecular is also deemed negligent as a result of the Individual Defendants'

negligence in preparing and reviewing the Proxy.

49.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<strong>COUNT II</strong>

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Intermolecular within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Intermolecular, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory

14

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them

from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless

and until the Company discloses the material information discussed above which has been omitted

from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 11, 2019                    **Monteverde & Associates PC**

                                        By:   _/s/ Juan E. Monteverde_____
                                           Juan E. Monteverde (JM-8169)
                                           The Empire State Building
                                           350 Fifth Avenue, Suite 4405
                                           New York, NY 10118
                                           Tel:(212) 971-1341
                                           Fax:(212) 202-7880
                                           Email: jmonteverde@monteverdelaw.com

                                           *Attorneys for Plaintiff*